IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 16, 2025 Session

## BUCHANAN DOBSON DUNAVANT v. THE WILLIAM B. DUNAVANT, JR. REVOCABLE LIVING TRUST ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-3895-20      Rhynette N. Hurd, Judge**

_____

### No. W2023-01213-COA-R3-CV
_____

This case involves the interpretation of a marital dissolution agreement ("MDA"[1]) in which the father was obligated to establish an irrevocable life insurance trust for his youngest child in an amount equal to the average of the after-tax funds received by his other children from four other trusts. He did not establish the trust before his death in 2021. Before he died, his youngest child sued to force him to create the trust. Ultimately, the trial court granted summary judgment in favor of the father's estate and another trust he established, holding that the MDA trust was too vague and indefinite to enforce and that the father's failure to establish the trust constituted a non-arbitrary disinheritance of the youngest child pursuant to the MDA. This Court, in *Dunavant v. The William B. Dunavant, Jr. Revocable Living Trust*, No. W2023-01213, 2024 WL 4211156 (Tenn. Ct. App. Sept. 17, 2024), affirmed the trial court. The Tennessee Supreme Court granted the Rule 11 application for the Living Trust and the Estate, vacated the judgment, and remanded the case to the Court of Appeals "for further consideration in light of *Pharma Conference Education v. State*, 703 S.W.3d 305 (Tenn. 2024)." We reverse the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

John S. Golwen, A. Alex Agee, William F. Burns, William E. Routt, III, and Frank L. Watson, III, Memphis, Tennessee, for the appellant, Buchanan Dobson Dunavant.

Jef Feibelman and L. Mathew Jehl, Memphis, Tennessee, for the appellees, The Estate of William B. Dunavant, Jr., and The William B. Dunavant, Jr. Revocable Living Trust.

---

[1] Although the document was labeled a marital settlement agreement, the parties and the trial court called it a marital dissolution agreement ("MDA"). We will continue to call it an MDA.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

This appeal is a remand from the Tennessee Supreme Court to consider the case "in light of *Pharma Conference Education, Inc. v. State*, 703 S.W.3d 305 (Tenn. 2024)." The facts and procedural background of this appeal are well-stated in our prior opinion, *Dunavant v. William B. Dunavant, Jr. Revocable Living Trust*, No. W2023-01213-COA-R3-CV, 2024 WL 4211156 (Tenn. Ct. App. Sept. 17, 2024):

> Buchanan Dobson Dunavant ("the Petitioner") is the adult son of Lillian Dobson Dunavant and William B. Dunavant, Jr. In May 1975, the Petitioner's parents were divorced, and in connection with their divorce, they entered into a marital dissolution agreement ("the MDA"). As is of relevance to this appeal, the MDA contained provisions that addressed the "Inheritance" of the Petitioner as well as that of his four older siblings.

> . . .

> The present litigation commenced in September 2020 when the Petitioner filed suit against his father in the Shelby County Circuit Court ("the trial court"). The Petitioner asserted his status as "a third-party beneficiary of the MDA" and alleged that his father had breached the requirement highlighted above pertaining to the creation of an irrevocable life insurance trust. In the prayer to his petition, the Petitioner requested a declaratory judgment, damages for breach of contract, and an accounting.

> During the pendency of the litigation, the Petitioner's father died, and the co-trustees of the "William B. Dunavant, Jr. Revocable Living Trust" were thereafter substituted as parties. Later, in August 2022, the "Estate of William B. Dunavant, Jr.," through its personal representative, was also added as a party by way of consent order.

> Although initial, competing motions for summary judgment were denied by the trial court in 2022, additional summary judgment practice ensued the following year. Of note, the Petitioner filed a motion for summary judgment as to liability on April 28, 2023. As outlined in a supporting memorandum, the Petitioner argued that undisputed facts established that the Petitioner's father had "breached paragraphs 3(b) and 6(a) of the MDA, causing damages to Petitioner," and thus, the Petitioner contended that he was "entitled to summary judgment as a matter of law at the liability stage of this action." This view of the case was not shared by the opposing side, however, and on June 15, 2023, the William B. Dunavant, Jr. Revocable

- 2 -

Living Trust, through its trustee, and the Estate of William B. Dunavant, Jr., through its personal representative, (collectively, "the Respondents"), filed their own motion for summary judgment. In part, the Respondents argued that (1) the MDA "is simply too vague and uncertain to be enforceable" and (2) even if there is an otherwise enforceable obligation, "the undisputed facts show that [the Petitioner's father] had numerous non-arbitrary reasons to disinherit Petitioner." In attempting to provide a foundation for the propriety of asserting this latter point, the Respondents, in a supporting memorandum, pointed to the language in paragraph 3(d) of the MDA, which they argued afforded Husband the "right to non-arbitrarily disinherit any of his children."

. . .

The trial court ultimately ruled in favor of the Respondents and held that they were entitled to summary judgment on two bases. First, the trial court held that the provisions at issue were not enforceable, opining that "there is no way to determine the parties had a meeting of the minds about what was required of [the Petitioner's father] to achieve the intended result." Indeed, as the trial court viewed the MDA, there were "omissions in the contract and the mechanism for quantifying Petitioner's inheritance." The trial court placed particular emphasis on the fact that the MDA did not specify a time for the Petitioner's father's performance nor the amount of insurance he was to procure.

As a second basis for the entry of summary judgment in the Respondents' favor, the trial court held that, "even if [the relevant provisions of the MDA] were enforceable, [the Petitioner's father] could and had cause to disinherit Petitioner." In connection with the grant of the Respondents' motion for summary judgment on these bases, the Petitioner's motion for summary judgment was of course denied. This appeal followed.

*Id.*, at *1-4 (footnotes omitted).

This Court concluded thusly:

[W]e agree with the trial court that the provisions at issue are unenforceable. Namely, it is respectfully unclear to us how to assess what exactly was required of the Petitioner's father, especially with respect to the amount of insurance he was required to procure. The MDA's terms do not chart a clear or specific course for him to follow. In our view, the widespread uncertainty that exists as to this matter is primarily attributable to the absence of a specific life insurance amount and the otherwise generalized, nonspecific

- 3 -

reference included in the MDA regarding "an amount equal to the average of the after-tax funds received from the other four Trusts."

*Id*. at \*6. This Court further observed:

[E]ven if the yardstick for measuring the amount of required life insurance is, as the Petitioner generally submits, "an amount equal to the average of the after-tax funds received," received as of what date? That question is left open through an absence of sufficient specificity in the contracting terms, and the lack of reasonable certainty regarding an insurance amount term inhibits us from being able to determine the existence of a breach and for giving any appropriate remedy to the Petitioner.

*Id*. at \*7 .

If, upon reconsideration, we determine that this Court's prior *Dunavant* opinion is correct and the MDA is too vague to enforce, then nothing more than writing an opinion to that effect need be done. If, however, we decide that the "vague" terms in the MDA can be reasoned out or discovered pursuant to *Pharma*, then we need to proceed with the other questions not addressed by the prior *Dunavant* opinion: (1) whether the failure to form the irrevocable life insurance trust is a form of non-arbitrary disinheritance permitted by paragraph (3)(d) of the MDA and, (2) whether the trial judge abused its discretion by limiting discovery.[2]

STANDARD OF REVIEW

"Whether a valid contract exists is a question of law," as are the "[i]nterpretation of a contract and a determination of the parties' intentions related to the contract." *Pharma*, 703 S.W.3d at 311. Therefore, "the trial court's decisions relating to contract formation and its interpretation of the contract are not afforded a presumption of correctness." *Id*. (quoting *German v. Ford*, 300 S.W.3d 692, 702 (Tenn. Ct. App. 2009)).

Tennessee appellate courts "use the abuse of discretion standard to review discovery determinations." *Castillo v. Rex*, 715 S.W.3d 321, 328 (Tenn. 2025). "A court abuses its discretion by '(1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.'" *Id*. (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

---

[2] As will be seen, the second issue is actually intertwined with the vagueness issue.

- 4 -

Our first question is what light can *Pharma* shed upon the question of vagueness or indefiniteness of the MDA? As always, we must begin with the language of the MDA in question:

> 3. <u>Children's Inheritance.</u>
> (a) <u>Children's Trusts.</u>
> It is acknowledged that Husband was grantor of four Trusts for the four older children, which Trusts have as assets certain stock of Dunavant Enterprises, Inc. and other assets. Wife was designated as Trustee and, by agreement of the parties, it is agreed that Samuel T. Reeves and Wife, Elizabeth Reeves, will serve as Successor Co-Trustees of said Trusts, with the right of substitution to arise in Wife in the event of the death of Husband.
>
> (b) <u>Inheritance of Buchanan Dobson Dunavant.</u>
> It is acknowledged that Buchanan Dobson Dunavant (Buck) was not born when the above Trusts were created, and in order to equalize the inheritance, Husband has arranged to provide life insurance for his benefit. In order to confirm this arrangement, Husband will create an irrevocable life insurance trust to receive insurance proceeds for Buck's benefit. This trust will provide that, from the first proceeds paid on death, the Trustee will hold for Buck's benefit an amount equal to the average of the after-tax funds received from the other four Trusts.
>
> (c) [irrelevant]
>
> (d) <u>Inheritance</u>.
> Husband hereby acknowledges that none of his five children will be arbitrarily disinherited.

On August 31, 2021, the trial court issued an order on the petitioner's request for a declaratory judgment, ruling as follows:

> (1) The 1975 Marital Settlement Agreement between Petitioner's mother and Respondent obligates Respondent to create, prior to his death, an irrevocable life insurance trust for the benefit of Petitioner and for the purpose of equalizing Petitioner's inheritance with that of Petitioner's siblings;
>
> (2) Respondent is obligated to fund an irrevocable life insurance trust for Petitioner's benefit prior to his death;

(3) The above obligations have existed since entry of the 1975 Agreement;

(4) The intent of the parties to the 1975 Agreement was to equalize Petitioner's inheritance with his siblings, subject to Respondent's ability to disinherit either child so long as no child is disinherited arbitrarily;

(5) Because the 1975 Agreement sets forth no deadline for creating an irrevocable life insurance trust for the benefit of Petitioner, Petitioner's breach of contract claim is not barred, nor is it ripe for adjudication.

William B. Dunavant, Jr. ("Mr. Dunavant") passed away on September 11, 2021. As previously mentioned, The William B. Dunavant, Jr. Revocable Living Trust was substituted as a defendant for Mr. Dunavant, and the Estate of Mr. Dunavant was also later added as a defendant.

From the briefs and the prior opinion of this Court, we know that there are several issues concerning allegedly vague or indefinite terms associated with the MDA provisions. "A marital dissolution agreement is 'a contract and thus is generally subject to the rules governing construction of contracts.'" *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006) (quoting *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001)). The Court of Appeals has stated that "a finding that a contract is sufficiently definite is favored, so as to carry out the reasonable intentions of the parties. Thus, courts will seek to avoid finding that an agreement is too uncertain to be enforceable by considering the surrounding circumstances and the conduct of the parties." *German*, 300 S.W.3d at 706.

The first and primary issue regarding the allegedly vague or indefinite terms concerns the amount of insurance to purchase for Buck's benefit. We know from subsection 3(b) that it must be "an amount equal to the average of the after-tax funds received from the other four Trusts." Our prior *Dunavant* opinion emphasized the indefiniteness of this term because one cannot know how much to put in the irrevocable life insurance trust to produce "an amount equal to the average of the after-tax funds received from the other four Trusts." *See Dunavant*, 2024 WL 4211156, at *6-7.

The Supreme Court's decision in *Pharma*, however, teaches us that we must go further than simply saying a term is indefinite and finding the agreement unenforceable. The main issue in that case was "whether Pharma's promise to produce pharmaceutical continuing education programs 'as is feasible' constitutes consideration." *Pharma*, 703 S.W.3d at 312. In particular, the Court's task was to determine whether Pharma's promise failed as consideration because the "as is feasible" language rendered an illusory promise too indefinite to enforce. *Id.* First, the *Pharma* Court used the statutory presumption of consideration in Tenn. Code Ann. § 47-50-103. *Id.* at 313. Second, the Court considered whether the State overcame that presumption. *Id.* at 314. Focusing on the contract's provision that Pharma "will produce as many … programs … as is feasible," the Court

observed that "[t]he term 'will' is mandatory, not discretionary." *Id*. Thus, the Court concluded, Pharma was "*required*" to produce as many programs "as is feasible." *Id*. The Court then turned to the term "feasible," finding that it had a well-accepted meaning. *Id*. The Court held that what constituted "feasible" could be determined by applying objective criteria for ascertaining "how many programs Pharma could produce," and that the provision was, therefore, definite enough to meaningfully constrain Pharma's discretion and allow a reviewing court to determine whether a breach occurred. *Id*. The Court determined that, "[t]he requirement that Pharma produce as many programs 'as is feasible' is therefore sufficiently definite to constitute an enforceable promise." *Id*. at 315. In other words, we must examine whether other language of the agreement, the situation of the parties, and the motivations and interests of the parties can make the seemingly indefinite term definite. *Id.* at 316.

We know that it is possible to calculate "an amount equal to the average of the after-tax funds received from the other four Trusts." The Petitioner's brief states that his expert, Mr. Vance, calculated the amount by using a stock ownership schedule and audited financial statements of Dunavant Enterprises, Inc. The uncertainty that remains is due to the trial court's prohibition of discovery about what distributions were made from the other four trusts. When denying this discovery, the trial court stated in an order filed May 24, 2022:

> Petitioner also requested and moved the Court to obtain private, financial information related to the distributions from various trusts that benefitted Petitioner'[s] siblings, who are not parties to this matter. Again, the Court finds that this requested information is not relevant to responding to Respondents' Motion for Summary Judgment and also contains the private, financial information of non-parties. Therefore, the Court DENIES Petitioner's Fourth Motion to Compel to the extent it requests the private, financial information of Petitioner's siblings and the various trusts that benefitted [sic] them[.]

The summary judgment motion filed by the Respondents challenged the MDA as vague because the amount of life insurance the MDA required for the Petitioner's benefit was not mentioned. The trial court granted this motion. The amounts of distributions to the siblings from their trusts were essential in calculating the amount of life insurance Mr. Dunavant had to provide in the life insurance trust to equalize the inheritance for the Petitioner. Consequently, the information was highly relevant to responding to the motion for summary judgment. The trial court erred in denying discovery by reaching an illogical decision and basing its decision on an erroneous assessment of the evidence. The trial court's concern about releasing private, financial information could have been addressed by using a protective order.

The Respondents' brief maintains that there are many other missing terms that make the trust provision vague, such as the identity of the trustee, the specific life insurance policy or policies, the amount of life insurance, the time for distribution of the funds from the trust, and the standards for distribution. Respondents forget that the MDA does not create the trust. Mr. Dunavant was obligated by the MDA to "create an irrevocable life insurance trust." These matters were left for Mr. Dunavant to establish in the trust, guided by the goal of equalizing the inheritance of the Petitioner with his siblings in "an amount equal to the average of the after-tax funds received from the other four Trusts." "'The terms of a contract may be reasonably certain even though it empowers one or both parties to make a selection of terms in the course of performance.'" *Pharma*, 703 S.W.3d at 315 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 34)).

Given that the amount of life insurance for the Petitioner's trust can be computed, and that Mr. Dunavant was left to establish the terms of the irrevocable life insurance trust, we reach the conclusion that paragraph 3(b) of the MDA is not vague. "'The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.'" *Id*. (quoting RESTATEMENT (SECOND) OF CONTRACTS § 33).

Now, we must determine an issue that the prior *Dunavant* opinion did not. We must decide whether the failure to form the irrevocable life insurance trust is a form of non-arbitrary disinheritance permitted by paragraph (3)(d) of the MDA. Paragraph 3(d) of the MDA contains a provision in which Mr. Dunavant "acknowledges that none of his five children will be arbitrarily disinherited." The Respondents maintain that "Paragraph 3(d) of the MDA allowed Mr. Dunavant not to create the trust provided that he had non-arbitrary reasons for doing so." They contend that failure to fund the life insurance trust was a disinheritance of the Petitioner and that Mr. Dunavant had plenty of non-arbitrary reasons for disinheriting the Petitioner, as evidenced by his express and detailed Amendment to William B. Dunavant, Jr. Revocable Living Trust Amended and Restated as of March 11, 2021, that listed the reasons for his limited and contingent bequest to the Petitioner in that trust.

The Amendment to William B. Dunavant, Jr. Revocable Living Trust Amended and Restated as of March 11, 2021, which Mr. Dunavant executed, shows without doubt that he knew how to disinherit the Petitioner from a trust in a non-arbitrary way. He wrote nothing to disinherit the Petitioner from the MDA life insurance trust. Moreover, the trial court found that he was obligated to create the irrevocable life insurance trust for the Petitioner. The trial court's determination is consistent with paragraph 3(b)'s use of the word "will," which is mandatory. *Pharma*, 703 S.W.3d at 314. An irrevocable trust cannot be undone, so paragraph 3(d) cannot apply to the paragraph 3(b) life insurance irrevocable trust or to any other irrevocable trust for the children.[3] Furthermore, it is under the section

_____

[3] For example, the Petitioner has moved this Court to take judicial notice under Tenn. R. App. P. 13(c)

broadly labeled "Children's Inheritance." Paragraph 3(d) must be considered a general proscription against the arbitrary disinheritance of any of the children in any will or trust. *Pharma* instructs that "we must . . . avoid interpretations that would render statutory language useless." *Id*. at 313 (quoting *Lee Med., Inc.*, 312 S.W.3d at 527).

Without a legal excuse for failing to create the trust, we must conclude that Mr. Dunavant breached the MDA.

CONCLUSION

We reverse the judgment of the trial court and find that paragraph 3(b) of the MDA is not too vague to enforce. We also reverse the trial court's determination that the trusts of the other siblings could not be the subjects of discovery and that the Petitioner was disinherited under paragraph 3(d) of the MDA. There are no disputed issues of material facts, only issues of law. Therefore, we grant the Petitioner's motion for summary judgment as to liability and deny the Respondents motion for summary judgment. The matter is remanded to the trial court for the calculation of damages due to Mr. Dunavant's breach of contract by failure to create the irrevocable life insurance trust envisioned by paragraph 3(b) of the MDA.

Costs of this appeal are assessed against the appellees, the Estate of William B. Dunavant, Jr. and The William B. Dunavant, Jr. Revocable Living Trust, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE

___

or notice of post-judgment facts under Tenn. R. App. P. 14 of two documents that are a part of *Dorothy Dunavant Fisher v. Russel L. Cherry and Steven E. Ehrhart, co-trustees of the William B. Dunavant Revocable Living Trust Amended and Restated March 11, 2021*: Order of August 13, 2025 Denying Plaintiff's Motion for Partial Summary Judgment and Granting Defendants' Motion for Summary Judgment, and the 1963 Declaration of Trust for Dorothy Dobson Dunavant. The trial court found that the 1963 trust was a trust referenced in paragraphs 3(a) and 3(b) of the MDA. We grant the Petitioner's motion. The 1963 trust is irrevocable. *See* 1963 Declaration of Trust for Dorothy Dobson Dunavant, § 9.